## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ERIK HARRIS,** | | |
| *Plaintiff,* | * | |
| | * | |
| **v.** | * | **Case No. 8:20-cv-03684-JRR** |
| | * | |
| **DENIS MCDONOUGH,** in his official capacity as Secretary of the United States Department of Veterans Affairs,[1] | * | |
| | * | |
| *Defendant.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This matter comes before the court on Defendant Secretary Denis McDonough's Motion to Dismiss. (ECF No. 19; "the Motion").  The court has reviewed all papers.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).

## I.     BACKGROUND[2]

*Pro se* Plaintiff Erik Harris filed this action against Denis McDonough, in his capacity as the Secretary of the United States Department of Veterans Affairs ("VA").  (Complaint; ECF No. 1.)  Plaintiff alleges that Defendant discriminated and retaliated against him on the basis of race during his employment at the VA in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").  *Id.* ¶¶ 1-2.

---

[1] "Title VII requires that a plaintiff who files a civil action claiming employment discrimination must name the head of the allegedly discriminating department or agency as the defendant."  *Simmons v. Shalala*, 946 F. Supp. 415, 418 (D. Md. 1996) (citing 42 U.S.C. § 2000e–16(c)).  "The head of the department or agency is the only proper defendant." *Id.*  Therefore, the proper Defendant in this case is Denis McDonough, in his capacity as Secretary of the United States Department of Veterans Affairs.

[2] For purposes of resolving the Motion, the court accepts as true all well-pleaded facts set forth in the Complaint.

Plaintiff is an African American veteran who has been employed as Director of Operations with the VA since May 20, 2012.  (ECF No. 1 ¶ 10.)  During the relevant time period, Plaintiff's supervisor was Clifton Blount ("CB"), Vice Chancellor of the Supply Chain Management School. *Id.* ¶ 12.  Plaintiff worked with Tona Braithwaite ("TB"), the Director of the Logistics Policy and Supply Management Service.  *Id.* ¶ 19.  Plaintiff also worked with Thomas A. Burgess ("TAB"), Associate and Deputy Assistant Secretary of the Logistics and Supply Chain Management.  *Id.* ¶ 20.  Plaintiff alleges various workplace incidents that occurred between September 2013 and December 2015 that, according to Plaintiff, "amounted to hostility and repris[al] to the degree that his ability to carry out his job task were severely affected." *Id.* ¶¶ 13, 15-50.  Specifically, Plaintiff alleges that CB denied his requests for leave, gave him negative performance reviews, issued letters of reprimand, and ridiculed him for tardiness; and that TB insulted and intentionally excluded him from emails, CB issued letters of reprimand, and ridiculed him for tardiness.  (ECF No. 1 ¶¶ 14, 15, 19, 20, 30, 34, 43, 44.)

On January 1, 2015, Plaintiff initiated contact with an EEO counselor.[3]  *Id.* ¶ 7.  Plaintiff alleges that, subsequently, Defendant engaged in actions to "dissuade him from pursuing a formal grievance."  (ECF No. 1 ¶ 38.)  Plaintiff alleges that "[o]n unspecified dates from October 2014 until July 2015, CB attempted to persuade [Plaintiff] to follow a policy agenda in exchange for protection from upper management retaliation due to his current EEO complaint."  *Id.* ¶ 28.  Subsequently, on unspecified dates from April 4, 2015, until July 2015, CB attempted to have Plaintiff make "public statements against the Agency knowing that such public statements could

---

[3] Because Plaintiff alleges that "[c]ounseling concluded on April 15, 2015 and plaintiff was mailed the Notice of Right to File a Discrimination Complaint which []he received on April 25, 2016" (ECF No. 1 ¶ 7), the court assumes Plaintiff meant that he initiated contact with an EEO counselor on January 1, 2015 not January 1, 2016 as alleged in the Complaint.  Defendant also clarifies in the Motion that Plaintiff initiated contact with an EEO counselor in January 2015.  (ECF No. 19 at 3.)

cost the Complainant his job." *Id.* ¶ 33.  Plaintiff was further instructed not to speak with a training specialist and was threatened with disciplinary action if he did so during office hours.  *Id.* ¶ 35. Plaintiff alleges that on August 3, 2015, CB removed a copy of the informal administrative grievance package from Plaintiff's desk.  *Id.* ¶ 36.  Later that same day, CB asked Plaintiff "to come into his office, closed the door, and engaged [Plaintiff] in a threatening conversation regarding his informal administrative grievance and stated 'You know this is petty. I have records too!'" (ECF No. 1 ¶ 37.)  CB then rejected Plaintiff's informal grievance and attempted to dissuade Plaintiff from pursuing a formal grievance.  *Id.* ¶ 38.

Plaintiff alleges that on August 23, 2015, CB attempted to avoid processing Plaintiff's formal administrative grievance by denying that he received a copy and refusing delivery of same. *Id.* ¶ 39.  In September 2015, CB also delayed Plaintiff's temporary detail to another service, threatened to issue a letter of reprimand, denied a request for leave, and "verbally chastised and berated" Plaintiff for numerous issues such as excessive leave requests, lack of work effort, tardiness, locking his door, typographical errors, and using a personal computer.  *Id.* ¶¶ 41-44.  On October 26, 2015, CB issued Plaintiff "a proposed 14-day suspension which was sustained on November 19, 2015, for the period of November 30, 2015, through December 13, 2015."  (ECF No. 1 ¶ 46.)

Plaintiff alleges that on April 15, 2015, his EEO counseling concluded and, on April 25, 2016, Plaintiff received the Notice of Right to File a Discrimination Complaint.  (ECF No. 1 ¶ 7.) Thereafter, Plaintiff filed a Complaint of Employment Discrimination with the Department of Veterans Affairs using VA form 4939.[4]  *Id.* ¶ 8.  On September 15, 2020, a final agency decision was issued in favor of Plaintiff's employer.  *Id.* ¶ 9.  Plaintiff filed the instant Complaint on

---

[4] The VA form 4939 is a "Complaint of Employment Discrimination" form that VA employees may use to file a formal EEO complaint of discrimination.

December 17, 2020.[5]  Defendant was not served with the Complaint until approximately 18 months later (July 1, 2022).  (ECF No. 15.)

Liberally construing the Complaint, Plaintiff sets forth three counts: (I) Discrimination Based on Race; (II) Hostile Work Environment; and (III) Retaliation.  (ECF No. 1 at 16-19.)  The prayer for relief seeks: (i) compensatory damages; (ii) back and future wages and benefits; (iii) attorneys' fees and costs; and (iv) any other relief this court deems proper.  *Id.* at 19-20.

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 19.)  Defendant argues that Plaintiff does not allege sufficient adverse action to state a claim; that Plaintiff failed to provide information connecting race to any adverse action; and that Plaintiff's allegations from 2013 were not properly administratively exhausted.  *Id.* at 4-5.

## II.    LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "tests the legal sufficiency of a complaint." It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only

---

[5] Plaintiff does not allege that he has received a right-to-sue letter.  The Supreme Court in *Fort Bend County, Texas v. Davis*, concluded that "Title VII's charge-filing requirement is not a jurisdictional cast" and "[i]nstead, Title VII's charge-filing provisions 'speak to . . . a party's procedural obligations.'"  139 S. Ct. 1843, 1850-51 (2019) (quoting *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014)).  In light of *Fort-Bend*, "[c]ourts now treat the Title VII charge-filing requirement as an affirmative defense, which defendants must raise."  *Spearman v. City of Annapolis*, No. JKB-21-1779, 2022 WL 316641, at *4 (D. Md. Feb. 1, 2022).  "Because the charge-filing requirement is an affirmative defense (as opposed to a jurisdictional issue), Plaintiff is not required to allege facts sufficient to establish that he satisfied this requirement."  *Id.* at *5.  Thus, while Plaintiff does not expressly allege that he received a right-to-sue letter nor does he allege when he filed the EEO complaint, the allegations before the court suggest that Plaintiff should have received a right-to-sue letter with respect to the 2015 charge.  *See Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426 (D. Md. 2013) (explaining that "[t]he EEOC is statutorily required to provide a right-to-sue notice to a complainant within, at the latest, 240 days after a claim of discrimination is filed").

4

be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is ". . . not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244 (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979)).

## III.   <u>ANALYSIS</u>

As an initial matter, the court is ever-mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented." *Id.*

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326-27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, [he] may rely on the burden shifting framework that

was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

A.   **Title VII Administrative Exhaustion**

Defendant argues that Plaintiff's allegations from 2013 were not properly administratively exhausted because Plaintiff failed to contact an EEO counselor within 45 days of the alleged conduct.  (ECF No. 19 at 5.)

Title VII requires a plaintiff to exhaust administrative remedies prior to bringing suit in court.  *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) (explaining that "[i]t is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC").  Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").  Relevant here, "[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."  29 C.F.R. § 1614.105(a).  This requirement "serves to encourage early resolution of discrimination claims on a less contentious and less adversarial basis." *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 540 (D. Md. 2013) (internal quotations and citation omitted).

29 C.F.R. § 1614.105 provides in relevant part:

> (a)(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
>
> (2) The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(1)-(2).  "A prospective plaintiff's failure to contact an EEO Counselor within the 45 days prescribed 'is tantamount to failure to timely exhaust all administrative remedies' and 'ordinarily results in dismissal of a complaint of discrimination.'"  *Upshaw v. Tenebaum*, No. PWG-12-3130, 2013 WL 3967942, at *5 (D. Md. July 21, 2013) (quoting *Blount v. Dep't of Health and Hum. Servs.*, 400 F. Supp. 2d 838, 841 (D. Md. 2004)).

Here, Plaintiff alleges that on January 1, 2015, he initiated contact with an EEO counselor.[6] (ECF No. 1 ¶ 7.)  Plaintiff alleges various incidents that occurred in September 2013, and May, July, and September 2014, but did not contact an EEO counselor until January 1, 2015 (or 2016).[7] *Id.* ¶¶ 15-18, 22-26.  Plaintiff may not, therefore, pursue relief for these alleged incidents.

## B.     Discrimination (Count I)[8]

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion,

---

[6] The result is the same whether Plaintiff initiated contact with an EEO counselor in January 2015 or 2016.
[7] Forty-five days prior to January 1, 2015, is November 17, 2014; forty-five days prior to January 1, 2016, is November 17, 2015.
[8] Liberally construing the Complaint, Plaintiff alleges claims of discrimination and hostile work environment in Count I.  For clarity, the court will analyze the two separately.

sex, or national origin[.]" 42 U.S.C. 2000e-2(a)(1).  Liberally construing Plaintiff's Complaint, Plaintiff alleges Defendant discriminated against him based on his race through unequal terms and conditions of employment.  (ECF No. 1 ¶ 61.)

At the motion to dismiss stage, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination under the evidentiary framework set forth in *McDonnell Douglas Corp.*"  *Holloway v. Md.*, 32 F.4th 293, 298 (4th Cir. 1973).  "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'"  *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).  "In employment discrimination cases, a plaintiff must plead that (1) [his] employer took an adverse employment action against [him], (2) because of [his] protected status." *Brooks v. United Parcel Serv. Inc.*, No. DKC-20-2617, 2021 WL 4339194, at *12 (D. Md. Sept. 23, 2021); *see McCleary-Evans*, 780 F.3d at 585 (explaining that the plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute").  "To allege that an employer acted because of an employee's protected status, there must be some connective thread between the alleged mistreatment and the protected status."  *Brooks*, 2021 WL 4339194, at *12 (internal quotation marks omitted); *see DangerField v. Johns Hopkins Bayview Med. Ctr., Inc.*, No. JKB-19-155, 2019 WL 6130947, at *2 (D. Md. Nov. 19, 2019) (explaining that "[t]o survive a motion to dismiss, the plaintiff must allege facts that are not merely 'consistent with discrimination,' but rather 'support a reasonable inference that the decisionmakers were motivated by bias'") (quoting *McCleary-Evans*, 780 F.3d at 586)).

The Complaint does not allege facts to support a reasonable inference of bias or discriminatory animus against Plaintiff based on his race.  Plaintiff alleges that he is an African

American, but does not allege facts to suggest that any action taken against him by the VA or its employees was motivated by, or based on, race.  The Complaint contains no allegations that Defendant imposed unequal terms of employment on the basis of Plaintiff's race.  While Plaintiff alleges that "similarly situated employees of the VA were not treated in the manner that plaintiff was treated with respect[] to the terms and conditions of his employment," and "[o]ther employees were also permitted to take leave under FMLA when necessary," he fails to allege that Defendant "took actions against [him] that similarly situated employees of other races [] did not receive . . . ." *Harris v. Charles E. Smith Life Communities*, No. MJM-21-1242, 2022 WL 4777592, at *6 (D. Md. Oct. 3, 2022); *see Haynes v. Waste Connections Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (explaining that "to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'" (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)); *Brooks*, 2021 WL 4339194, at *12 (noting that "[f]or failure to promote claims, allegations that a plaintiff was rejected for a position in favor of a less qualified candidate from outside her protected class can support an inference that the employer acted because of the plaintiff's protected status").

The Complaint further fails to identify a comparator's race or gender, and job titles or responsibilities.  *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) (explaining that "[b]ecause two coworkers treated differently for the same offense might not be similarly situated if they have different job responsibilities or circumstances, a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination"); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (2010) (affirming

district court's conclusion that the complaint failed to state a Title VII race discrimination claim where the complaint named a comparator but failed to allege facts suggesting the comparator was similarly situated or "that race was the true basis for [the plaintiff's] termination").

Accordingly, to the extent Plaintiff alleges that Defendant discriminated against him by unequal terms and conditions of employment, he fails to allege the minimally requisite facts to support a claim of race-based discrimination.

**C.**     **Hostile Work Environment (Count I)**

Liberally construing Plaintiff's Complaint, Plaintiff alleges he was subjected to a hostile and offensive working environment based on race. (ECF No. 1 ¶ 54.)

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e–2(a)(1) (2000). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986)).

To maintain a claim for hostile work environment, a plaintiff must allege "that the harassment was (1) unwelcome, (2) based on [Plaintiff's race]; (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive atmosphere, and (4) imputable to [the employer]." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174-75 (4th Cir. 2009). "[A] complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-Evans*, 780 F.3d at 585 (quoting *Bell Atlantic Corp. v . Twombly*, 550 U.S. 544, 555 (2007)).

Generally, "viable hostile work environment claims [] involve repeated

conduct . . . however, an 'isolated incident[]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  In analyzing whether an environment is hostile or abusive, the court considers all of the alleged circumstances.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  The conduct "which gives rise to an abusive work environment must be both objectively and subjectively 'hostile' and 'abusive.'"  *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022).

The subjective component of the severity/pervasiveness element requires the employee to personally "believe that the conduct rises to the level of a hostile environment;" the objective component requires the employee to "reasonably believe that the conduct rises to the level of a hostile environment."  *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 331 (4th Cir. 2018).  The objective inquiry focuses on "whether the harassing conduct was objectively 'severe or pervasive,'" in light of "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris*, 510 U.S. at 23 (1993).  "[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'"  *Id.* (quoting *Faragher*, 524 U.S. at 788).  Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *see Dangerfield*, 2019 WL 6130947, at *3 (explaining that "[w]orkplace interactions which are merely 'disrespectful, frustrating, critical, and unpleasant' do not create a

hostile work environment") (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003),

*aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished)).

In *E.E.O.C. v. Sunbelt Rentals*, the Fourth Circuit succinctly explained the standard as

follows:

> Title VII does not establish a general civility code for the American workplace. This is because, in order to be actionable, the harassing conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment . . . . Our circuit has likewise recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test. Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.

521 F.3d at 315-16 (internal quotation marks and citations omitted).

Here, Plaintiff's hostile work environment claim is based on Defendant threatening his job

security, ridiculing him for tardiness, denying his requests for leave, and dissuading him from

filing formal grievances.  *See generally* ECF No. 1 ¶¶ 27, 30, 31, 34, 36-38, 40, 44.  Further,

Plaintiff alleges that "[o]ther [c]o-workers attested to the different treatment and also witnessed

racial slurs and comments . . . [i]ncluding the reference of 'a red-neck calling Plaintiff boy'" which

"is inherent to a term used in slavery to demean African Americans."[9]  *Id.* ¶ 59.

---

[9] To the extent Plaintiff relies on the alleged incident with TB in 2014 where, Plaintiff alleges, TB "insulted and demeaned [Plaintiff] on several occasions when he 'freely' stated I am just a 'redneck' from West Virginia" (ECF No. 1 ¶ 19), as discussed above, Plaintiff failed to timely exhaust his administrative remedies.  The court therefore declines to consider this allegation.  *See* Section III.A. *supra*.  That notwithstanding, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  "The status of the harasser is also a significant factor to be considered; harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious."  *McIver*, 42 F.4th at 408.  TB was Plaintiff's co-worker, not supervisor.  Additionally, the alleged conduct occurred one time, and is, therefore, more appropriately categorized as "episodic," not "continuous and concerted."  *Faragher*, 524 U.S. at 787 n. 1.

Plaintiff's allegations do not amount to an abusive working environment.  *See Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (explaining that the plaintiff's "allegations, which largely include the actions taken against her in response to the concerns regarding her performance, fall well short of alleging an abusive working environment"); *Buchhagen v. ICF Intern., Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (stating that allegations of the plaintiff's supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harping on a mistake" made by the plaintiff, "making snide comments," "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing [plaintiff's] use of leave and compliance with [the supervisor's] directives . . . . falls far short of being severe or pervasive enough to establish an abusive environment" (internal alterations omitted)); *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) (finding that the allegations primarily involving "denials of requests to supervisors, negative evaluations of [plaintiff's] job performance, and emails from colleagues criticizing [the plaintiff] for being insensitive and exclusionary" do not describe harassment that is so severe or pervasive).  To the extent the court considers Plaintiff's allegation of racial comments or slurs, Plaintiff fails to set forth any detail regarding such alleged comments.  *Bazemore v. Best Buy*, No. CV PJM 18-264, 2018 WL 311752, at *3 (D. Md. June 25, 2018), *aff'd*, 957 F.3d 195 (4th Cir. 2020) (explaining that "[g]eneral allegations of racial slurs, without specific references to detail, context, date, or circumstances, are insufficient to establish a hostile work environment"); *but see Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 670 (D. Md. 2008) (finding that the plaintiff sufficiently alleged a hostile work environment where the plaintiff alleged that "many overt racist statements, including calling her White bitch").

Further, Plaintiff fails to allege facts to suggest that any of these incidents was motivated

by his membership in a protected class. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (noting that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex'"). Plaintiff does not allege that any of these incidents with his supervisor, CB, occurred because of his race. Therefore, even if the conduct was sufficient to constitute a hostile work environment, Plaintiff fails to state that the conduct occurred because of his race. *See Chang Lim*, 310 F. Supp. 3d at 600 (concluding that even if the plaintiff sufficiently alleged conduct that constituted a hostile work environment, he failed to state that such conduct was based on his race); *Bonds*, 629 F.3d at 386 (affirming denial of hostile work environment claim where the plaintiff failed to state that any harassment, she suffered was due to her race or gender). The Motion will be granted as to Count I.

### 4.    Retaliation (Count II)

Defendant argues that Plaintiff fails to plausibly state a retaliation claim. (ECF No. 19 at 11.) To state a claim for retaliation, Plaintiff must allege that (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse employment action.[10] *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).

#### a.    Protected Activity

Liberally construing Plaintiff's Complaint, he adequately alleged that he engaged in a protected activity by engaging in EEO counseling in January 2015 (or 2016) and by filing an EEO

---

[10] "Retaliation claims under Title VII can be based on an employer's retaliatory creation of a hostile work environment." *Fordyce v. Prince George's Cnty. Md.*, 43 F. Supp. 3d 537, 552 (D. Md. 2014). "If the adverse employment action is creation of a hostile work environment, the plaintiff must also allege the factors for a hostile work environment claim." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 152 n.10 (4th Cir. 2021). To maintain a claim for hostile work environment, a plaintiff must allege "that the harassment was (1) unwelcome, (2) based on [a protected activity], (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [the employer]." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174-75 (4th Cir. 2009). To the extent Plaintiff maintains that the adverse employment action is the creation of a hostile work environment, the court disagrees. *See* Section III.3. *supra*.

complaint with the VA office.[11]   (ECF No. 1 ¶¶ 8, 9, 67); *see Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (holding that filing a complaint with the EEOC is protected activity); *Battle v. Burwell*, No. PWG-14-2250, 2016 WL 4993294, at *13 (D. Md. Sept. 19, 2016) (finding that the plaintiff engaged in protected activity when he sought EEO counseling and filed an EEO complaint). Accordingly, the first element is met.

### b.    *Adverse Employment Action*

"An adverse employment action is one that 'a reasonable employee would have found . . . materially adverse' such that 'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"   *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 670-671 (D. Md. 2008) (quoting *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 n. 2 (4th Cir. 2007)).

> Plaintiff alleges:
>
> On unspecified dates from April 4, 2015 until July 2015, CB attempted to lure Complainant into making public statements against the Agency knowing that such public statements could cost the Complainant his job.
>
> On July 20, 2015, CB issued Complainant a Letter of Reprimand for unprofessional conduct.
>
> On July 22, 2015, CB instructed Complainant not to speak with

---

[11] "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)).   It "includes an employee's opposition to what he or she believes is an unlawful employment practice." *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016).   For example, "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998).   While "[c]omplaints about management activities that would not constitute unlawful discrimination do not count as protected activity," *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018), "where the employer understood or should have understood that the plaintiff opposed an unlawful practice, that opposition is protected activity." *Bowman*, 173 F. Supp. 3d at 238 (citing *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012)).

Plaintiff alleges that Defendant retaliated against him "for exercising his civil rights and complaining about [Defendant's] discriminatory employment practice described above, in violation of [T]itle VII."  (ECF No. 1 ¶ 63.) Plaintiff further alleges that "[w]ith each report to his supervisors, through his command and with human resources, plaintiff made it clear that the harassing conduct complained of was based on his race." *Id.* ¶ 56.   While it is unclear what Plaintiff reported to his supervisors, the court is satisfied that Plaintiff sufficiently alleges a protected activity by contacting an EEO counselor and filing an EEO complaint.  *See* Section III.4.a., *supra*.

Debra Karambellas (DK), Training Specialist, and threatened him with a disciplinary action if he observed him speaking with DK during office hours.

On August 3, 2015, CB attempted to circumvent processing the Complainant's informal administrative grievance by allegedly removing a copy of the informal grievance package from both the Complainant's and his assistant's desk.

On August 3, 2015, CB asked Complainant to come into his office, closed the door, and engaged Complainant in a threatening conversation regarding his informal administrative grievance and stated "You know this is petty. I have records too!"

On August 12, 2015, CB rejected Complainant's informal grievance and attempted to dissuade him from pursuing a formal grievance.

On August 23, 2015, CB attempted to avoid processing Complainant's formal administrative grievance by denying that he received a copy and refusing delivery by the facility's security officer.

On unspecified dates to present Clifton Blount (CB), Veterans Affairs Acquisition Academy, has denied Complainant's reasonable accommodation requests.

In September 2015, CB delayed Complainant's temporary detail to another service.

On an unspecified date in September 2015, CB threatened to issue Complainant a Letter of Reprimand, then expedited placing the letter in Complainant's personnel folder.

On an unspecified date in September 2015, CB verbally chastised, and berated the Complainant for numerous alleged employment "shortcomings" such as: excessive leave requests, tardiness, lack of work effort and efficiency, typographical errors, using personal computer, and locking the door to his office.

On September 30, 2015, CB denied Complainant's request for leave for the following week.

On October 7, 2015, CB denied Complainant's request to work a compressed work schedule.

On or about October 26, 2015, CB issued Complainant a proposed

14-day suspension which was sustained on November 19, 2015 for the period of November 30, 2015 through December 13, 2015.

On November 20, 2015, CB, Vice Chancellor, VAAA, denied Complainant's request for sick leave.

During November 2015, CB sent Complainant an email implying that he was not in compliance with Executive Order Number 5396, and then threatened to charge Complainant Absent Without Leave (AWOL) if he did not provide medical documentation to support his sick leave request.

On or about December 16, 2015, when Complainant returned from a 14- day Suspension, CB instructed Complainant to execute and forward an email, indicating that the pilot training course was ready to proceed as scheduled and threatened to cancel Complainant's leave request if he did not comply.

Or about December 16, 2015, CB informed Complainant that he did not approve of Complainant's email concerning the pilot training and told him that his leave would be cancelled for failure to properly follow instructions.

(ECF No. 1 ¶¶ 33-50.)

To be sure, some of these alleged actions, alone, are not sufficient adverse employment actions. *See Muldrow v. Blank*, No. PWG-13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (noting that neither " 'a formal letter of reprimand,' or 'a proposed termination' " qualifies as "an adverse employment action in a retaliation claim" (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 470-71 (D. Md. 2011))). The court, however, must consider all the circumstances in which Plaintiff "took EEO action [] and experienced repeated employment actions that either were adverse in and of themselves or cumulatively would have dissuaded an employee from taking further EEO action." *Battle*, 2016 WL 4993294, at *15; *see Dyer v. Oracle Corp.*, No. PWG-16-521, 2016 WL 7048943, at *6 (D. Md. Dec. 5, 2016) (explaining that "rather than considering each alleged adverse employment action in isolation, courts may 'consider the cumulative effect of several allegedly retaliatory acts without converting the claim into a hostile work environment

claim,' and may 'consider whether based upon the combined effect of . . . alleged events, a reasonable worker could be dissuaded from engaging in protected activity" (quoting *Smith v. Vilsack*, 832 F. Supp. 2d 573, 585-86 (D. Md. 2011)).

Plaintiff's denied requests for leave (ECF No. 1 ¶¶ 44, 47) may qualify as adverse employment actions. *See Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 706 (D. Md. 2003) (concluding that denial of the plaintiff's leave request constitutes adverse employment action where it resulted in the plaintiff "not receiving pay she otherwise would have received"). Additionally, Plaintiff's 14-day suspension may also qualify as an adverse employment action. *See Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 516 (D. Md. 2011) (noting that exclusion from a meeting and suspension without pay "less than two weeks after he filed the EEO charge" is sufficient to state a retaliation claim). Plaintiff expressly alleges that Defendant took actions to prevent him from continuing to pursue his EEO Complaint. (ECF No. 1 ¶¶ 36-39.) The numerous alleged incidents, which are alleged to have occurred after Plaintiff contacted an EEO counselor, could have dissuaded a reasonable employee from "making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Accordingly, the second element is met.

### c. Causal Connection

"A causal relationship exists 'where the employer takes adverse employment action against an employee shortly after learning of the protected activity.'" *Battle*, 2016 WL 4993294, at *13 (quoting *Johnson v. United Parcel Serv., Inc.*, No. RDB-14-4003, 2016 WL 4240072, at *6 (D. Md. Aug. 11, 2016)). "[C]ourts often consider: (1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the protected activity and the allegedly retaliatory

act." *Lewis v. Balt. City Bd. of Sch. Comm'rs*, No. CCB-14-3363, 2016 WL 2939695, at \*5 (D. Md. May 20, 2016). "Ordinarily, temporal proximity between the protected activity and the adverse action is sufficient to suggest causality." *Autrey v. Maryland*, No. GLR-14-3064, 2016 WL 362502, at \*5 (D. Md. Jan. 29, 2016).

"[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is 'very close.'" *Jenkins v. Gaylord Ent. Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *see Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 99 (2016) (explaining that "a court will not infer a causal link based on temporal proximity alone unless the adverse action occurred very close to, or shortly after, the defendant became aware of the protected activity") (internal citations and quotation marks omitted)).

Plaintiff alleges that he contacted an EEO counselor on January 1, 2015; however, the first date that subsequent alleged activity occurred is April 4, 2015. (ECF No. 1 ¶ 33.) "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (*per curiam*) (citing with approval cases where courts found periods of three and four months too long); *see German v. Akal*, No. CCB-11-1242, 2011 WL 5974619, at \*6 (D. Md. Nov. 29, 2011) (dismissing retaliation claim where absent more specific facts or dates the "four-month gap may be too long to provide a causal link between the two actions"). Thus, absent additional allegations to bolster the claim, the four-month gap is too long to support an inference of causation.

"In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). "Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Id.* Stated differently, if too long of a period of time has passed for Plaintiff to rely on temporal proximity alone, Plaintiff may rely on "intervening events" to "demonstrate plausible retaliatory animus. *Bowman v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-15-01282, 2016 WL 1159259, at *6 (D. Md. Mar. 24, 2016).

The court finds instructive *German v. Akal Security, Inc.* No. CCB-11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011). In analyzing the causation prong for the plaintiff's retaliation claim, the court explained:

> It is less clear that she has sufficiently alleged causation. German provides no specific facts to support her own conclusions that the actions taken by Akal and the MAA were related to her protected activities. But, even without other specific evidence, if the employer takes the action shortly after learning of the employee's protected activity, courts may infer a causal connection between the two. Even so, the only protected activity in the complaint with an identifiable date is German's May 30, 2007, EEOC charge, and the only subsequent adverse employer action cited with sufficient specificity is the MAA's September 28, 2007, letter instructing Akal to remove German from the contract. This four-month gap may be too long to provide a causal link between the two actions. While German also alleges her earlier demotion was a result of Plaintiff complaining of Defendants' discriminatory and retaliatory conduct, this allegation lacks sufficient information to infer causality through temporal proximity. From the complaint, the court can infer that the demotion occurred after April 2007, but German has provided no dates for her earlier complaints to Akal or MAA supervisors. Unless she can provide more specific facts or dates, German's retaliation claim must also be dismissed.

2011 WL 5974619, at *6 (internal citations and quotation marks omitted); *see Clark v. Snuipa II*

20

*Inc.*, No. 8:10-cv-02027-AW, 2011 WL 5439000, at *5 (D. Md. Nov. 8, 2011) (concluding that, although the complaint fails to allege dates necessary for the court to consider the temporal proximity, the plaintiff adequately alleged that the defendant fired her because she complained of sexual harassment); *Watkins v. Norfolk State Univ.*, No.2:20cv608(RCY), 2022 WL 905222, at *5 (E.D. Va. Mar. 28, 2022) (noting that the causation prong requires that the facts "raise the inference that the employer took the adverse employment action because the plaintiff engaged in protected activity"). Like *German*, Plaintiff fails to provide specific dates; however, Plaintiff alleges specific facts to raise the inference that Defendant took adverse action because of Plaintiff's protected activity. *See Clark and Watkins*, *supra*.

> Plaintiff alleges:
>
> > On unspecified dates from October 2014 and continued until July 2015, CB threatened Complainant's job security by stating numerous times, "If you turn on me, I'm going to come after you."
> >
> > On unspecified dates from October 2014 until July 2015, CB attempted to persuade Complainant to follow a policy agenda in exchange for protection from upper management retaliation due to his current EEO complaint.
> >
> > On unspecified dates from April 4, 2015 until July 2015, CB attempted to lure Complainant into making public statements against the Agency knowing that such public statements could cost the Complainant his job.
> >
> > Defendant the VA its representatives, and employees engage in a course of conduct designed to retaliate, in which did retaliate, against plaintiff for his opposition to discrimination and or participation in protected processes to challenge discrimination in violation of title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 . . . .
> >
> > Defendant the VA its employees and/or agents retaliated against plaintiff in such a way that the actions were designed to create a delay or avoid an individual from bringing charges of discrimination and might have dissuaded a reasonable person from making or supporting complaints of discrimination.

21

(ECF No. 1 ¶¶ 27-28, 33, 67-68.)   Indeed, Plaintiff alleges that his supervisor, CB, "rejected [Plaintiff's] informal grievance and attempted to dissuade him from pursuing a formal grievance." *Id.* ¶ 38.

Taken in the light most favorable to Plaintiff and accepting the allegations as true, at this stage, Plaintiff states a claim for retaliation.  The Motion will be denied as to Count II.

**CONCLUSION**

For the reasons set forth herein, by separate order, the Motion (ECF No. 19) will be granted in part and denied in part: granted as to Count I and denied as to Count II.

/S/
_____
Julie R. Rubin
United States District Judge

September 18, 2023

22